IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANIBAL O. FRANCO,

    Petitioner,                       No. 2:05-cv-2444-LKK-JFM (HC)

    vs.

DAVID L. RUNNELS,

    Respondent.                <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

    Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2002 conviction on charges of residential burglary, attempted murder, misdemeanor assault, and multiple sex offenses. This action is proceeding on petitioner's original petition filed December 5, 2005.

### FACTS[1]

> On July 29, 2001, [the victim], a mentally retarded 51-year-old woman, lived alone in her apartment. She had difficulty communicating, especially in stressful situations. [The victim] was also physically disabled by diabetes, which caused her to hobble and walk slowly due to pain and swelling in her legs.

---

[1] The facts are taken from the decision of the state court of appeal on petitioner's direct appeal, <u>People v. Franco</u>, No. C043418 (June 24, 2004), a copy of which is in this record as Lodged Document 4.

1

1  The 21-year-old [petitioner] lived in a nearby apartment. He drank up to 25 cans of beer, smoked rock cocaine, and snorted methamphetamine that day. [Petitioner] forced his way inside [the victim]'s apartment around 11:00 p.m. Over the next several hours, [petitioner] physically and sexually assaulted her. The unlawful acts included rape, oral copulation, sodomy, and penetration with a foreign object. Toward the end of the ordeal, [petitioner] told [the victim], "[Y]ou better not say anything or I'll leave you dead." He grabbed a hammer from the bathroom shelf and hit [the victim] in the head up to five times, knocking her to the floor. She felt pain in her head and ear, and her face was bleeding. After [petitioner] strangled [the victim] with his hands, she played dead. He sat her on the floor of the bathroom, got dressed, tried to wipe the blood off himself and the hammer, and left about 7:00 a.m.

[The victim] went to the manager's apartment. She was shaking and crying with blood running down her face. [The victim] told the apartment manager than a man from apartment No. 2093 had beaten her with a hammer. [The victim] also said he hurt her "another way." The manager called 911.

The ambulance took [the victim] to the hospital where a member of the sexual assault response team examined her. The examination revealed lacerations on [the victim]'s face and ear, swelling on her lower jaw, bruising under her left eye, red marks on her neck consistent with strangulation, torn tissues around the anus, and diffuse redness and tenderness in the vaginal interior wall and external labial area. There was blood and feces on her nightgown.

[Petitioner] telephoned his girlfriend, Kimberly Gonzalez, around 8:30 a.m. He told her he was "in trouble" and "thought he had killed somebody." He asked to be picked up at a friend's apartment because the police were likely to be looking for him. He said he needed a ride to Mexico. Gonzalez called the sheriff's department, and [petitioner] was arrested a short time later.

[Petitioner] testified at his trial. [Petitioner] insisted that [the victim] had invited him into her apartment and that they engaged in consensual oral copulation and sexual intercourse. With respect to one of the acts of intercourse, [petitioner] described [the victim] getting down on the floor "like doggie style." He testified, "I knew what she wanted." [Petitioner] put his penis in her vagina from behind. He said he ejaculated outside [the victim]'s vagina, maybe on her back. [Petitioner] had described the same sex act to the detective who interviewed him after his arrest.

[Petitioner] acknowledged that he became angry with [the victim] when he was getting ready to leave, and hit her three or four times with a hammer. He admitted concealing his

bloodstained clothing and offering to flee to Mexico. After his arrest and at the urging of the detective, [petitioner] wrote [the victim] a letter of apology.

People v. Franco, slip op. at 2-4.

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

/////

123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

    A. Sufficiency of the Evidence

As the state court of appeals set forth in its decision on petitioner's direct appeal, petitioner was convicted on eight counts, as follows: "count one, forcible rape (Pen. Code, § 261, subd. (a)(2)); unspecified statutory references that follow are to the Penal Code); count two, forcible oral copulation (§ 288a, subd. (c)(2)); count three, forcible sodomy (§ 286, subd. (c)(2)); counts four and five, forcible penetration with a foreign object (§ 289, subd. (a)(1)); count six, misdemeanor assault (§ 240); count seven, attempted murder (§§ 187 & 664); and count eight, residential burglary (§ 459)." People v. Franco, slip op. at 1-2. In his first eight claims, petitioner contends, seriatim, that there was no evidence to support any of the counts on which he was convicted. The last reasoned state court rejection of these claims is the decision of the Sacramento County Superior Court denying a petition for writ of habeas corpus filed by petitioner in that court. See Lodged Document 6. The state superior court denied the claims as follows:

> Petitioner first claims that the evidence was insufficient to support the verdicts on Counts One through Eight.
>
> The claim fails on the merits. Petitioner admitted entering the victim's apartment and committing what he characterized as consensual sexual acts with her, and the jury heard overwhelming evidence to contradict petitioner's claim of consent, from the victim's description of the events and statements to the apartment manager and the sheriff's deputy, as well as from medical

4

> testimony regarding trauma to the victim's anus and genital area. The evidence also showed that petitioner had threatened to leave the victim dead if she said anything, grabbed a hammer from the bathroom shelf and hit the victim in the head up to five times with it, then strangled the victim with his hands; shortly thereafter, the victim was taken to a hospital, where medial personnel saw lacerations and bruising on her head and face, and red marks on her neck consistent with strangulation, all of which overwhelmingly showed both assault and attempted murder.  And, evidence that petitioner entered the victim's apartment with the intent to have sex with the victim, thereby establishing burglary, was amply supported by petitioner's own testimony that the victim had invited him into the apartment wearing a nightgown and "acting like really easy," and physical evidence showing the violence inflicted upon her thereafter in connection with the sex acts.  As such, the evidence was more than sufficient to support the verdicts in Counts One through Eight, requiring denial of this first claim (In re Bower (1985) 38 Cal.3d 865).

Lodged Document 6, In re the Matter of , vs. Anibal O. Franco, Case No.: 04F09191, slip op. at 1-2.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. 307, 319.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. 307, 324 n.16.

The court has reviewed the record. After completion of said review, the court finds that the evidence tendered at trial was sufficient to support petitioner's conviction on each of the eight counts. The state court's rejection of this claim was neither contrary to nor an unreasonable application of applicable principles of clearly established federal law. These claims should be denied.

B. <u>Introduction of Petitioner's Statements to Police</u>

Petitioner's ninth claim is that his Fifth Amendment privilege against self-incrimination was violated by introduction of statements made by petitioner to police after he had invoked his rights to remain silent and to an attorney. In his twelfth claim, petitioner claims, <u>inter alia</u>, that his attorney was ineffective in failing to move to suppress these statements. The last reasoned state court rejection of these claims is the decision of the Sacramento County Superior Court on petitioner's petition for writ of habeas corpus, which denied the claims as follows:

> Petitioner next claims that his rights under <u>Miranda v. Arizona</u> (1966) 384 U.S. 436 were violated, and that his trial attorney was ineffective in failing to move to suppress. He claims that after he invoked his Fifth Amendment privilege, the police did not stop his interrogation. He claims that he was asked if he wished to speak with the police, was asked "no? you don't want to speak with us?," then he asked for clarification, was told he had the right to speak with police and was asked if he wanted to do so, and he said "oh well, yes." He also claims that other parts of his statement that followed were coerced, when the officer told him that he needed to be honest and tell the truth. He claims his statements in the interview were introduced at trial, and was prejudicial.
>
> Petitioner fails to attach a copy of trial transcript showing exactly what was admitted at trial. Nor does he attach a copy of a complete transcript of the interview, for the court to assess at this time. As such, the claim fails (<u>In re Harris, supra</u>, 5 Cal.4th 813, 827 fn. 5).
>
> Regardless, it is meritless. Even if the relevant portions of the interview are as set forth by petitioner, they do not show any impropriety. As for the question of whether petitioner invoked the right to silence, petitioner does not show that petitioner actually uttered any word in response to the first question "do you wish to speak with us." Rather, it appears that the officer merely asked

> petitioner if he wishes to speak with the officers, and upon receiving no response attempted to obtain some kind of response from petitioner on the question, by asking "no? you don't want to speak with us?," which elicited an equivocal response from petitioner, seeking clarification of the question. Upon clarification immediately thereafter, petitioner finally made a statement one way or the other on the question, responding "yes," that he would speak to the officers. Petitioner shows no violation of Miranda. Since there was no violation of Miranda, trial counsel was not ineffective in failing to move to suppress on Miranda grounds.

Lodged Document 6, In re the Matter of , vs. Anibal O. Franco, Case No.: 04F09191, slip op. at 2.[2]

In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court held that statements made by a criminal defendant during custodial interrogation are inadmissible at trial unless the defendants is advised of, inter alia, the right to remain silent and to the assistance of counsel and thereafter voluntarily consents to continue with the interrogation. Thus, in accordance with Miranda,

> [a] suspect in police custody must be informed of his right to remain silent before any interrogation begins. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602. If the suspect indicates in any manner, at any time prior to or during questioning, that he wishes to invoke his right to remain silent, the interrogation must cease. Id. at 474, 86 S.Ct. 1602. Any statement taken after the suspect's invocation of this right constitutes the product of compulsion and cannot be used as proof of guilt. Id.
>
> However, "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants [to invoke the privilege]." Davis v. United States, 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Clarifying questions "minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement." Id. "If the suspect's statement is not an [ ] unambiguous or

/////

---

[2] Respondent contends that the state superior court's rejection of the claim suggests that it is unexhausted but contends that the claim can and should be denied on the merits. See Answer to Petition for Writ of Habeas Corpus, filed April 25, 2006, at 19 n.7

unequivocal request for counsel, the officers have no obligation to stop questioning." Id. at 461-62, 114 S.Ct. 2350.

Sechrest v. Ignacio, 549 F.3d 789, 805-806 (9th Cir. 2008).

After the defense finished presenting its case, the prosecution called as a rebuttal witness Sacramento Sheriff's Deputy Hector Limon. Deputy Limon, who is fluent in Spanish, had participated as a translator in a custodial interrogation of petitioner conducted on July 30, 2001, following petitioner's arrest. Reporter's Transcript of Proceedings (RT) at 827, 830-31. Deputy Limon testified extensively about statements made by petitioner during the interrogation,, including petitioner's admission that he was wearing Nike shoes in the victim's apartment after having told the detectives he was wearing sandals, and his admission that he had hit the victim with a hammer after repeatedly denying that and telling detectives that the victim had fallen. Id. at 831-846. Petitioner claims that admission of his confession violated his Fifth Amendment rights because he invoked his right to remain silent prior to making the challenged statements.

The transcript of the interrogation of petitioner shows that he received the warnings required by Miranda prior to making any of the statements challenged in the instant claim. See Clerk's Transcript on Appeal (CT) at 429-435.[3] At the conclusion of the Miranda advisement, the following exchange took place between petitioner and the detective:

> DETECTIVE: You have the – you have the (Unintelligible). Ha – havi – having these – these rights, do you wish to speak with us? No? You don't want to speak with us?
>
> FRANCO: What do you mean? That is, I don't – don't know in what way.
>
> DETECTIVE: After I told you all of this –
>
> FRANCO: Oh.
>
> DETECTIVE: -- you have the right to speak with us. Do you want to speak with us?

---

[3] Petitioner was asked and answered several preliminary questions prior to receiving the Miranda warnings. See CT at 402-429.

8

1  FRANCO: Oh well yes.

2  DETECTIVE 1: Yes. Yes.

3  DETECTIVE 3: He said he wants to talk to us.
   Okay.

4  DETECTIVE 1: (Unintelligible).

5  DETECTIVE 3: Let's do this and then – uh – he needs to sign here
6  and then we'll sign it here. So. So he doesn't really want to talk us
   [sic] then – so clarify that, so.

7  DETECTIVE 1: You do want to speak with us, right?

8  FRANCO: Uh-huh.

9  DETECTIVE 3: Can I have your signature for interpretation. You
10  can acknowledge that he did say –

11  DETECTIVE 1: yes.

12  DETECTIVE 3: -- he understood all his rights and that in the
    process he also understood that – I'm gonna have you sign here –
13  that he did want to speak with us. Correct?

14  DETECTIVE 1: Correct.

15  CT at 433-435. After review of the record, this court finds that petitioner did not invoke his right

16  to remain silent. He agreed to talk with the detectives and in fact did so extensively. There was

17  no Miranda violation in the admission of statements he made to detectives during the

18  interrogation. In order to prevail on his claim that his attorney was ineffective in failing to move

19  to suppress the statements made to police, petitioner must show both that the failure to move to

20  suppress the statements was an unreasonable error, and that the error was prejudicial. See

21  Strickland v. Washington, 466 U.S. 688 (1984). Error is shown where the identified acts or

22  omissions were outside the wide range of professional competent assistance. Id. at 690. To

23  demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for

24  counsel's unprofessional errors, the result of the proceeding would have been different." Id. at

25  694. Since petitioner's Miranda rights were not violated, petitioner can make neither showing

26  required to prevail on this claim of ineffective assistance of counsel.

9

The state court's rejection of these claims were neither contrary to nor an unreasonable application of applicable principles of clearly established federal law. The claims should be denied.

C. Right of Confrontation

Petitioner claims that his right to confront and cross-examine the witnesses against him were violated through the admission of several hearsay statements during trial. The state superior court rejected this claim, raised in petitioner's state habeas petition, as follows:

> Petitioner next claims that his Sixth Amendment confrontation rights were denied, when the crime laboratory technician's supervisor testified as to the laboratory technician's writing in a report that petitioner's saliva was found on his penis. Petitioner claims this was hearsay admitted in violation of Crawford v. Washington (2004) 158 L.Ed.2d 177.
>
> Petitioner is not entitled to any relief under Crawford, as petitioner's case was final long before Crawford was decided. Crawford is not retroactive to habeas corpus cases that were final before it was decided. (Brown v. Uphoff (10th Cir. 2004) 381 F.3d 1219).
>
> Regardless, petitioner does not show that error, if any, in the admission of this limited evidence was prejudicial. Again, petitioner admitted all of the sex acts in his own testimony at trial, rendering the only issue for the jury that of consent; this limited evidence had no bearing on that consent question.

Lodged Document 6, In re the Matter of , vs. Anibal O. Franco, Case No.: 04F09191, slip op. at 3.

This claim arises out of the decision by the prosecution to call as a witness the supervisor of a crime lab technician to testify to the contents of the lab technician's report because the lab technician was on maternity leave.[4]  See RT at 105-106.  Relying on

/////

---

[4] Petitioner also claims that comments made by the prosecutor in closing argument concerning petitioner's roommates, see section IIE2, infra, violated his rights under the Confrontation Clause because petitioner's roommates did not testify at trial. This contention is without merit.

1  Crawford v. Washington, 541 U.S. 36 (2004), petitioner claims this violated his rights under the
2  Confrontation Clause.

3        In Crawford, the United States Supreme Court held that "'[t]estimonial statements
4  of witnesses absent from trial' are admissible 'only where the declarant is unavailable, and only
5  where the defendant has had a prior opportunity to cross-examine [the witness].'" Whorton v.
6  Bockting, 549 U.S. 406, 413 (2007) (quoting Crawford at 59). Crawford overruled Ohio v.
7  Roberts, 448 U.S. 56 (1980), which "had held that the Confrontation Clause permitted the
8  admission of a hearsay statement made by a declarant who was unavailable to testify if the
9  statement bore sufficient indicia of reliability, either because the statement fell within a firmly
10 rooted hearsay exception or because there were 'particularized guarantees of trustworthiness'
11 relating to the statement in question." Whorton, at 412 (quoting Ohio v. Roberts, 448 U.S. at
12 66). In Whorton, the United States Supreme Court held that the rule announced in Crawford
13 does not apply retroactively to cases on collateral review. Petitioner cannot, therefore, obtain
14 relief based on the rule announced in Crawford.

15       Moreover, even if petitioner could show that his rights under the Confrontation
16 Clause were violated by the testimony of the lab technician's supervisor concerning the report, he
17 would still have to show that the error "'"had a substantial and injurious effect or influence in
18 determining the jury's verdict."'" Whelchel v. Washington, 232 F.3d 1197, 1206 (9th Cir. 2000)
19 (quoting Christian v. Rhode, 41 F.3d 461, 468 (9th Cir. 1994) (quoting Brecht v. Abrahamson,
20 507 U.S. 619, 637 (1993)). Petitioner has made no such showing nor, on this record, could he.
21 The state court's rejection of this claim was neither contrary to nor an unreasonable application
22 of applicable principles of clearly established federal law. This claim should be denied.

23     D. Trial Court Error in Telling the Jury that Petitioner Was in Jail

24       Petitioner claims that his Sixth Amendment rights were violated when the trial
25 court told the jury petitioner was in custody. The state superior court rejected this claim, raised
26 in petitioner's state habeas petition, on the grounds that (1) petitioner had failed to attach a copy

1  of the transcript evidencing the statement; and (2) in any event, petitioner had failed to show any
2  prejudice from the alleged error.  Lodged Document 6, <u>In re the Matter of , vs. Anibal O. Franco</u>,
3  Case No.:  04F09191, slip op. at 3.
4       The instant claim arises from the following statement by the trial court on
5  September 26, 2002, during jury voir dire:

> THE COURT:  . . . .
>
> Once a defendant is held to answer in a criminal charge, which is a preliminary step before we get to a trial, sometimes defendants remain out on bail pending the course of the trial.  Sometimes they remain in custody pending the result of the trial.
>
> You may not take into account or consideration, you may not discuss it, it may not form the basis of any of your opinions whether or not a defendant remains in custody pending the resolution of the trial.
>
> Oftentimes, not always, but oftentimes the reasons a defendant remains in custody is financial, he or she cannot post the bail.  So the law directs you may not consider that in any way in determining guilt or innocence.
>
> Does everybody understand that?
>
> THE JURORS:  Yes.
>
> THE COURT:  Is there anybody in their heart of hearts who believes that if the defendant remains in custody, which Mr. Franco is, and which you've probably figured out by the fact that we have law-enforcement in the courtroom with us, that he's more likely to be guilty than not?  Anybody believe that way?

20  Lodged Document 11, Supplemental Reporter's Transcript on Appeal, at 25-26.
21       In order to show that the court's comments violated petitioner's Sixth Amendment
22  rights, petitioner "must show prejudice stemming from the comment."  <u>U.S. v. Herbert</u>, 698 F.2d
23  981, 985 (9th Cir. 1983).  Petitioner has made no showing of prejudice, nor could he.  The trial
24  court's comments were made in the context of specifically informing prospective jurors that they
25  could not consider petitioner's custodial status in determining his guilt or innocence of the
26  charges.  The comments did not violate petitioner's rights under the Sixth Amendment.  The state

court's rejection of this claim was neither contrary to nor an unreasonable application of applicable principles of clearly established federal law. This claim should be denied.

### E. Ineffective Assistance of Counsel

Finally, petitioner raises two claims of ineffective assistance of counsel. Petitioner argues that both his trial and appellate counsel rendered ineffective assistance. The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

1  The <u>Strickland</u> standards apply to appellate counsel as well as trial counsel. <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989). In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. <u>Miller</u>, 882 F.2d at 1434 n.9.

### 1. Failure to Investigate

Petitioner's first claim is that his trial counsel failed to investigate "numerous witnesses", thereby preventing him "from presenting a reasonably effective defense." Petition, filed December 5, 2005, at 6m. The state superior court rejected this claim, raised in petitioner's state habeas petition as follows:

> Petitioner next claims that trial counsel was ineffective in failing to adequately investigate the case and failing to call certain persons as witnesses. Petitioner, however, only speculates as to what might have been uncovered or testified to. He fails to attach any reasonable available documentary evidence, such as an affidavit from a potential witness who did not testify, that would should what evidence or testimony could have been presented that would have made a difference in the outcome of the trial. Having failed to do so, the claim fails [Citations omitted].

Lodged Document 6, <u>In re the Matter of , vs. Anibal O. Franco</u>, Case No.: 04F09191, slip op. at 4.

Before this court, petitioner claims that several witnesses were available who could have testified that the victim "invited men in her apartment all the time." Petition, at 6m. Petitioner also claims that his attorney at the preliminary hearing told petitioner that the victim's best friend had told the police that the victim "was not so impaired as been claimed." <u>Id</u>. Petitioner has presented no evidence in support of these assertions, nor has he made any showing that such evidence, if presented, would have made any difference in the outcome of his criminal trial. This claim should be denied.

/////

/////

          2. <u>Failure to Object to Prosecutor's Statements</u>

Petitioner also claims that his trial counsel was ineffective in failing to object to the prosecutor's argument to the jury that petitioner's roommates knew the victim and had told petitioner of her condition. Petitioner contends this might have led the jury to think petitioner knew the victim was mentally ill. Petitioner raised a claim of prosecutorial misconduct in his state habeas corpus petition, which was rejected by the state superior court as follows:

> Petitioner next claims that the prosecutor committed misconduct in telling the jury that petitioner's roommates knew and told petitioner of the victim's mental infirmities, thereby allowing the jury to think that the victim was in fact mentally ill.
>
> Petitioner fails to attach a copy of the trial transcript to evidence the comment, requiring denial of the claim (<u>Harris, supra</u>).
>
> Regardless, the claim is meritless. There was testimony that the victim had difficulty communicating, and that the victim and petitioner were neighbors in the same apartment complex. Further, the victim herself testified, and the jury could assess for itself whether she gave an appearance of being mentally disabled. And, again, the evidence was overwhelming of the crimes regardless of whether petitioner thought the victim was mentally disabled or not. The claim, therefore, fails (<u>Bower, supra</u>).

Lodged Document 6, <u>In re the Matter of , vs. Anibal O. Franco</u>, Case No.: 04F09191, slip op. at 4.

Petitioner's claim apparently arises from the following comments made by the prosecutor during closing argument:

> He knew she lived there. He knew who she was and her condition. You know, everybody in that apartment – apartment must have known. His roommates lived there before him. They had talked with her before. And he said he had seen her before. He knew she was there. And he knew she would be easy prey for him. He knew she was vulnerable. He went over there with the intent to assault her as borne out by the evidence and borne out by his conduct as soon as she opened the door.

RT at 1012-13. Petitioner has made no showing that his counsel's failure to object to these comments by the prosecutor fell outside the bounds of reasonably competent professional

15

assistance, or that he was prejudice by counsel's failure to interpose an objection. As the state superior court found, the argument was grounded in the evidence and, in any event, the evidence against petitioner was overwhelming. This claim should be denied.

### 3. Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel should have raised "the above issues" on appeal. Petition, at 6q. Petitioner also claims that his jury was "very biased" because there were several people in the jury venire who were connected to people with mental disabilities, one who "attends rape victims" one who was beaten and raped, one with a brother who works for the Sacramento Police Department, one whose son is a retired correctional officer, and one who worked for the City of Folsom in the community correctional facility[5] and, therefore, that appellate counsel should have raised this claim on direct appeal. Petitioner raised a claim of a potentially biased juror in his state habeas corpus petition, which was rejected by the state superior court as follows:

> Petitioner finally claims that it is possible that a biased juror served on his jury. Petitioner, however, admits that he does not have possession of a complete transcript of the jury voir dire, and has no idea whether certain prospective jurors ever served on his jury, after stating they had dealt with mentally ill persons, had family members suffering from depression or a learning disability, or had family members who had been sexually assaulted. Petitioner has no idea whether those jurors were peremptorily challenged, excused for cause, or excused for hardship. As such, petitioner fails to present evidence that a biased juror in fact served as a regular juror on his case, requiring denial of the claim (Swain, supra; Harris, supra; Bower, supra).

Lodged Document 6, In re the Matter of , vs. Anibal O. Franco, Case No.: 04F09191, slip op. at 4.

/////

---

[5] Petitioner acknowledges that he does not know if any of these jurors actually served on his jury.

Petitioner has presented no factual basis for this claim.  Specifically, he has made no showing that a biased juror actually sat on the jury at his trial.  For that reason, there is no support for his claim that his appellate counsel should have raised such a claim on appeal, nor is there any basis for a finding that such a claim might have led to a different outcome in the proceedings against him.  This claim should be denied.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 26, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

12;fran2444.157